EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Prudencio Acevedo Arocho y Otros<br><br>Apelantes<br><br>v.<br><br>Departamento de Hacienda de Puerto Rico y Otros<br><br>Apelados | Apelación<br><br>2023 TSPR 80<br><br>212 DPR ___ |

Número del Caso:  AC-2020-0037


Fecha:  26 de junio de 2023


Tribunal de Apelaciones:

    Panel Especial-Orden Administrativa TA-2020-031


Abogada de la parte apelante:

    Lcda. Ivonne González Morales


Oficina del Procurador General:

    Lcdo. Omar Andino Figueroa
    Subprocurador General

    Lcda. Carmen A. Riera Cintrón
    Procuradora General Auxiliar



Materia:  Derecho Laboral – Término prescriptivo para que los empleados o las empleadas gubernamentales presenten una reclamación salarial, y la inexistencia de plazo para su retroactividad.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Prudencio Acevedo Arocho
y Otros

    Apelantes

      v.                     AC-2020-0037    *Apelación*

Departamento de Hacienda
de Puerto Rico y Otros

      Apelados

Opinión del Tribunal emitida por el Juez Asociado señor COLÓN PÉREZ.

En San Juan, Puerto Rico a, 26 de junio de 2023.

El presente caso nos provee la oportunidad de reafirmar el término prescriptivo que tienen los empleados y las empleadas gubernamentales para incoar una reclamación salarial. Asimismo, nos permite aclarar si dicha reclamación está ceñida o no a un periodo de retroactividad.

Adelantamos que, en lo relacionado al término prescriptivo que tienen los funcionarios y las funcionarias gubernamentales para incoar una reclamación salarial, y de conformidad con lo resuelto en *Aponte v. Srio. de Hacienda, E.L.A.,* *infra*, nos reafirmamos en que el mismo es uno de tres (3) años, contados a partir de la fecha en que

éstos o éstas hayan dejado de prestar sus servicios. Además, resolvemos que las reclamaciones salariales de empleados o empleadas gubernamentales no están limitadas a término retroactivo alguno. Veamos.

I.

Allá para el 8 de julio de 2005, un grupo de funcionarios y funcionarias gubernamentales (en adelante, "peticionarios"), presentaron ante el Tribunal de Primera Instancia una *Demanda* sobre sentencia declaratoria en contra del Departamento de Hacienda, del Centro de Recaudaciones de Ingresos Municipales (en adelante, "CRIM"), de la Oficina de Recursos Humanos del Estado Libre Asociado de Puerto Rico (en adelante, "ORHELA") y del Estado Libre Asociado de Puerto Rico (en adelante, "ELA"). En esencia, los peticionarios le solicitaron al foro primario que se declarara nulo el **Memorando General Núm. 5-86** promulgado el 23 de abril de 1986 (en adelante, "Memorando Núm. 5-86"), por la Oficina Central de Administración de Personal (en adelante, "OCAP") -- siendo esta última la antecesora de la ORHELA --, el cual abordaba el tema del salario mínimo federal.

En lo pertinente, los referidos empleados y empleadas gubernamentales alegaron lo siguiente: 1) que trabajaron o trabajaban en el Departamento de Hacienda o el CRIM; 2) que sufrieron daños irreparables tras dichas agencias implementar la legislación referente al salario mínimo federal mediante el Memorando Núm. 5-86; 3) que, a raíz de

ello, se les dejó de pagar en consideración a la jerarquía, responsabilidades y complejidad de sus puestos, según el sistema establecido bajo la *Ley de Personal del Servicio Público de Puerto Rico*, *infra*, y la *Ley de Retribución Uniforme*, *infra*, lo que a su vez les privó de los beneficios salariales otorgados en virtud de dichos estatutos; 4) que tanto el Departamento de Hacienda como el CRIM no mantuvieron actualizadas sus estructuras de retribución en clara contravención a la *Ley Federal de Salario Mínimo*, *infra*, la *Ley de Retribución Uniforme*, *infra*, y sus respectivos reglamentos; y 5) que, con ese proceder, las agencias de referencia violaron el derecho de los peticionarios a un debido proceso de ley, al permitir el menoscabo de beneficios adquiridos.

Sostuvieron, además, que los foros judiciales eran los adecuados para atender su petición. De la misma forma, manifestaron que su reclamación salarial no estaba prescrita conforme surgía del Art. 1867 del Código Civil de 1930, *infra*, entonces vigente, y la jurisprudencia interpretativa aplicable.

Acaecidos varios trámites procesales no necesarios aquí pormenorizar,[1] y luego de la correspondiente

---

[1] Entre éstos, el 25 de octubre de 2005, el ELA, por sí y en representación del Departamento de Hacienda, presentó una moción de desestimación bajo la Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2. Alegó que la *Demanda* instada por los peticionarios dejaba de exponer una reclamación que justificara la concesión de un remedio. En igual fecha el CRIM también presentó una contestación a la *Demanda*, en la cual, entre otras defensas afirmativas, sostuvo que la acción estaba prescrita.

autorización del Tribunal de Primera Instancia, la mencionada *Demanda* fue enmendada el 10 de agosto de 2006 y el 24 de octubre de 2007. Ambas enmiendas, tuvieron el efecto principal de acumular nuevos demandantes (los también aquí peticionarios).[2]

Así las cosas, el 25 de febrero de 2013 el ELA, por sí y en representación del Departamento de Hacienda, contestó la *Segunda demanda enmendada*. En su escrito, negó las alegaciones en su contra y, entre otras defensas afirmativas, insistió en que la causa de acción estaba prescrita y que ésta dejaba de exponer hechos que justificaran la concesión de un remedio. Indicó, además, que -- por analogía -- en el presente caso debía utilizarse

---

[2] Transcurridos varios días, el ELA -- nuevamente -- presentó una moción de desestimación. Esta vez alegó que los peticionarios no habían agotado los remedios administrativos por lo que el Tribunal de Primera Instancia carecía de jurisdicción. Oportunamente, los peticionarios se opusieron. Examinados los planteamientos de las partes, el 26 de febrero de 2008 el foro primario emitió una *Sentencia Parcial* mediante la cual desestimó la causa de acción en contra del ELA y el Departamento de Hacienda.

Sin embargo, dicho dictamen fue revocado por el Tribunal de Apelaciones, en el Caso Núm. **KLAN200800696**, mediante *Sentencia* emitida el 16 de febrero de 2010. El foro apelativo intermedio entendió que la causa de acción era una en la que se solicitaba una sentencia declaratoria y que, por tanto, el Tribunal de Primera Instancia era el foro adecuado para atender dicha reclamación. En virtud de ello, se devolvió el caso al foro primario para que se continuara con los procedimientos.

De otra parte, el CRIM también instó una moción de desestimación ante el Tribunal de Primera Instancia. Reiteró, entre otras cosas, que la *Demanda* mediante la cual se reclamaban salarios había prescrito. Así, y tras evaluar los escritos de las partes, el foro primario desestimó la causa de acción en contra del CRIM. Dicho dictamen fue confirmado por el Tribunal de Apelaciones en el Caso Núm. **KLAN200801951**. **Utilizando la metodología del razonamiento analógico y el principio de *in pari materia* el foro apelativo intermedio razonó que el término prescriptivo aplicable era de tres (3) años y que, para los casos en que no hubiera prescrito la acción, la reclamación salarial estaba limitada a los tres (3) años antes de presentarse la acción judicial; por lo que confirmó la desestimación de la acción judicial en cuanto al CRIM. Dicha determinación advino final y firme.**

el periodo de retroactividad de tres (3) años relativo a las reclamaciones de salario establecido en la *Ley de Salario Mínimo, Vacaciones y Licencia por Enfermedad de Puerto Rico*, *infra*.

Culminado cierto descubrimiento de prueba, el 18 de marzo de 2014 los peticionarios presentaron una moción para que se dictara sentencia sumaria respecto a las reclamaciones de los empleados del Departamento de Hacienda. Argumentaron que, en lo relacionado a éstos y éstas, no existían controversias de hechos por lo que solo restaba que el foro primario aplicara el derecho. En síntesis, solicitaron que se le ordenara al Departamento de Hacienda el pago de determinado bono no recurrente otorgado bajo la Ley Núm. 12 de 27 de agosto de 1982, además, de que se decretara la nulidad del Memorando Núm. 5-86 de la OCAP, toda vez que éste contravenía los métodos de ajuste salarial establecidos en la ley y en el Reglamento de Retribución Uniforme, así como lo dispuesto en el Art. II, Sec. 16, de la Constitución del Estado Libre Asociado de Puerto Rico, *infra*. En igual tono, requirieron que se le ordenara a la División del Personal o Recursos Humanos del Departamento de Hacienda corregir su remuneración.

Conjuntamente, peticionaron que la agencia de referencia utilizara el mecanismo de asignación de puestos que entraría en vigor en el 2005, tal y como se había determinado en el caso civil *Carmen Socorro Cruz Hernández y otros v. Depto. de la Familia,* (KAC1991-0655) atendido

por el Tribunal de Primera Instancia. A esto último, añadieron que en el caso de epígrafe aplicaba la doctrina de cosa juzgada en su modalidad de impedimento colateral por sentencia. En apoyo a su solicitud, los peticionarios anejaron dos (2) declaraciones juradas y otros documentos.

Por su parte, el 17 de junio de 2014 el ELA se opuso a la solicitud de sentencia sumaria presentada por los peticionarios. Esgrimió, entre otros asuntos, que el Departamento de Hacienda había pagado el bono o compensación especial no recurrente en virtud de la Ley Núm. 12 de 27 de agosto de 1982 y que había actuado de conformidad a lo establecido en la *Ley de Retribución Uniforme*, *infra*, la cual, a su modo de ver, ordenaba que las agencias tuvieran planes de clasificación y retribución, mas no requería que éstas aprobaran nuevos planes para determinada fecha. Al respecto, destacaron que no existía un deber ministerial de las agencias del ejecutivo de enmendar periódicamente sus escalas retributivas para conformarlas a los aumentos del salario mínimo federal.

Por otro lado, enfatizaron que la reclamación de salarios en su contra debía estar limitada a los tres (3) años anteriores a la presentación de la acción en virtud de lo dispuesto en el Art. 12 de la *Ley de Salario Mínimo, Vacaciones y Licencia por Enfermedad de Puerto Rico*, *infra*. Sostuvieron, por último, que no aplicaba la modalidad de impedimento colateral por sentencia al caso de autos, pues no se cumplía con el requisito de identidad de partes. En

apoyo a su oposición, el ELA también incluyó declaraciones juradas, entre otra prueba documental.

Estudiados los aludidos escritos junto a sus anejos, el Tribunal de Primera Instancia emitió una *Sentencia Parcial* en la que declaró *no ha lugar* la solicitud de sentencia sumaria instada por los peticionarios. Además, desestimó la demanda con perjuicio, con excepción de las reclamaciones presentadas por un grupo de los empleados, -- compuesto de auditores, especialistas en contribuciones y ejecutivos en asuntos contributivos --, por entender que existían hechos materiales en controversia que impedían disponer de la reclamación por la vía sumaria. Resolvió que si bien la *Ley de Retribución Uniforme*, *infra*, no disponía de un término prescriptivo para las reclamaciones salariales, la jurisprudencia había pautado que en estos casos aplicaba el término de tres (3) años establecido por el Art. 1867 del Código Civil, *infra*. A esos efectos, el foro primario concluyó que, según se desprendía del expediente, el último aumento al salario mínimo federal entró en vigor en el 1997 y la última vez que se implementó una nueva estructura de sueldo en Hacienda había sido el 1 de julio de 2000, por lo que era forzoso concluir que la *Demanda* en contra de la referida agencia estaba prescrita.

Insatisfechos con dicha determinación, los peticionarios presentaron una moción de reconsideración junto a una solicitud de determinaciones de hechos y conclusiones de derecho adicionales. En particular,

argumentaron que la sentencia parcial no atendió la solicitud de nulidad del Memorando Núm. 5-86. Rechazaron, además, la determinación de desestimar por prescripción la reclamación salarial. De otra parte, el ELA también solicitó la reconsideración de lo dictaminado.

Como consecuencia de las peticiones presentadas por ambas partes, el 1 de marzo de 2017 el Tribunal de Primera Instancia notificó una *Sentencia parcial enmendada*. En esta ocasión declaró *ha lugar* la moción de sentencia sumaria. Al así hacerlo, el foro primario determinó que los siguientes hechos materiales no estaban en controversia por encontrar apoyo en la prueba anejada a los escritos de las partes:

1. El 8 de julio de 2005, alrededor de 933 demandantes, empleados de carrera que trabajan y/o trabajaron para el Dpto. de Hacienda y en el CRIM, como secretarias(os), oficinistas, auxiliares fiscales, oficiales en contabilidad, auditores, etc., presentaron la *Demanda* de epígrafe.

2. El 14 de agosto de 2006, los Demandantes presentaron una *Demanda enmendada* en la que acumularon alrededor de 1,039 demandantes.

3. El 24 de octubre de 2007, los Demandantes presentaron una **Segunda demanda enmendada aumentando la cantidad de demandantes a 1,906 demandantes**.

4. El 12 de julio de 1979, la Asamblea Legislativa aprobó la Ley Núm. 89 de 12 de julio de 1979, mejor conocida como la Ley de Retribución Uniforme.

5. El 20 de noviembre de 1985, el Director de la Oficina Central de Administración de Personal (OCAP) le remitió al Gobernador de Puerto Rico un Memorando sobre "Aumento de sueldo a los Empleados Públicos" en el que se le informó que era necesario cumplir con el salario mínimo federal que estaba pronto a entrar en

vigor y que, por lo tanto, se había diseñado una nueva estructura salarial.

6. **El 15 de abril de 1986, entró en vigor la Ley de Normas Razonables del Trabajo (FLSA por sus siglas en inglés).**

7. El Plan de Retribución vigente en la Administración Central, y por lo tanto, en el Dpto. de Hacienda, contaba con 39 escalas salariales y estaba desarrollado en base a un sueldo básico de $442.00 mensual para una jornada semanal de 37.5 horas. De estas, las primeras 9 escalas recibían sueldos por debajo del salario mínimo federal.

8. **El Dpto. de Hacienda utilizó el método recomendado por el Memorando General Núm. 5-86 del 23 de abril de 1986 de la OCAP y se les ajustó los salarios a los empleados asignados a las primeras 9 escalas.**

9. El 1 de abril de 1990, el salario mínimo aumentó a $3.55 por hora y el Dpto. de Hacienda ajustó los salarios de los empleados asignados a las primeras 11 escalas.

10. El 1 de abril de 1991, el salario mínimo aumentó a $3.70 por hora y el Dpto. de Hacienda ajustó los salarios de los empleados asignados a las primeras 13 escalas.

11. El 1 de abril de 1992, el salario mínimo aumentó a $3.90 por hora y el Dpto. de Hacienda ajustó los salarios de los empleados asignados a las primeras 15 escalas.

12. El 1 de abril de 1993, el salario mínimo aumentó a $4.05 por hora y el Dpto. de Hacienda ajustó los salarios de los empleados asignados a las primeras 16 escalas.

13. El 1 de julio de 1994, el Dpto. de Hacienda adoptó, con vigencia del 1 de abril de 1994 una estructura de retribución con 39 escalas que cumplía con el salario mínimo de $4.25 la hora que entró en vigor en ese año.

14. El 1 de octubre de 1996, el salario mínimo aumentó a $4.75 por hora, equivalente a $772.00 mensuales para una jornada semanal de 37.5 horas y el Dpto. de Hacienda ajustó los

salarios de los empleados asignados a las primeras 6 escalas.

15. El 1 de septiembre de 1997, el salario mínimo aumentó a $5.15 la hora, equivalente a un sueldo básico de $837.00 mensuales para una jornada semanal de 37.5 horas y el Dpto. de Hacienda ajustó el salario de los empleados de las primeras 6 escalas.

16. **El último salario mínimo federal que entró en vigor dentro del término que abarcan los hechos alegados en la *Demanda* tuvo lugar en 1997.**

17. **El 1 de julio de 2000, el Dpto. de Hacienda adoptó una nueva estructura de sueldo, esta fue la última vez durante el periodo que incluye la demanda.**

18. La Ley Núm. 184-2004 derogó expresamente la Ley de Retribución Uniforme.

19. El 24 de mayo de 1999, varios empleados del Dpto. de Hacienda presentaron una apelación ante la Junta de Apelaciones del Sistema de Administración de Personal (JASAP) en la que argumentaron que, por una reclasificación de sus puestos, el trabajo que llevaban a cabo no coincidía con la remuneración asignada.

20. El 12 de agosto de 2002, el Sr. Juan J. Arroyo Zengotita presentó una solicitud de auditoría de puesto.

21. El 8 de octubre de 2003, la JASP emitió una Resolución en la que declaró "Ha lugar" una Estipulación, Acuerdo y Relevo General presentado por las partes.

22. **El 23 de enero de 2004, varios empleados dentro de los puestos de Auditores de Contribuciones y Especialistas en Contribuciones solicitaron se les concedieran los derechos concedidos a los empleados en el mismo puesto que aquellos que se beneficiaron de la transacción en el caso presentado ante la JASAP, *Raúl Hernández Bujosa y otros v. Departamento de Hacienda*, CL-RET-99-05-1306.**

23. El 25 de diciembre de 2004, los empleados de los puestos mencionados solicitaron nuevamente, mediante carta, que se les

concedieran los derechos de los demás empleados.

Por otro lado, dicho foro determinó que los siguientes hechos sí estaban en controversia:

1. Los elementos tomados en consideración por la OCAP al emitir el Memorando General Núm. 5-86.

2. Los derechos que se le concedieron a los empleados en los puestos de especialistas de contribuciones y auditores el Dpto. de Hacienda en el acuerdo de transacción que se estipuló mediante resolución del 16 de octubre de 2003 en el caso Núm. CL-RET-99-05-1306 de la JASAP.

3. La razón objetiva para que el Dpto. de Hacienda no les concediera los mismos derechos a los empleados en los puestos de especialistas de contribuciones y auditores.[3]

Establecido lo anterior, el Tribunal de Primera Instancia resolvió que la alegación sobre cosa juzgada no aplicaba al presente caso, porque no se cumplía con el requisito de perfecta identidad entre las personas litigantes. **De otro lado, el foro primario reafirmó que la acción presentada por los peticionarios sobre salarios se debía desestimar por haberse presentado con posterioridad al término prescriptivo de tres (3) años. Fundamentó su determinación en que, luego de aplicar el término prescriptivo de tres (3) años dispuesto en el Art. 1867 del Código Civil, *infra*, así como al utilizar el término de retroactividad pautado en el Art. 12 de la *Ley de Salario Mínimo, Vacaciones y Licencia por Enfermedad de Puerto Rico*,**

---

[3] Véase, Apéndice del recurso de apelación, págs. 889-892.

*infra*, **era claro que los peticionarios -- tanto los que habían cesado los servicios como los que se encontraban laborando -- tenían tres (3) años para reclamar salarios dejados de percibir, cosa que no hicieron.** Calculó, que no fue hasta cinco (5) años después de haberse implementado el último plan de retribución en Hacienda que los peticionarios presentaron su reclamación salarial.

Por último, el Tribunal de Primera Instancia reiteró que existían controversias de hechos materiales respecto a las reclamaciones del grupo de auditores, especialistas en contribuciones y ejecutivos en asuntos contributivos, así como sobre la validez del Memorando Núm. 5-86 de la OCAP. En cuanto al mencionado memorando, explicó que dicho asunto no se podía adjudicar de manera sumaria porque no surgía del expediente la prueba necesaria para resolverlo en estricto derecho.

Inconforme, el ELA solicitó una enmienda *nunc pro tunc* y la reconsideración de lo sentenciado. Igualmente, aunque por reclamos distintos, los peticionarios solicitaron la reconsideración y determinaciones de hechos adicionales. Sin embargo, el 26 de julio de 2017 el foro primario decretó la paralización del caso con atención a la petición de quiebra del gobierno de Puerto Rico de conformidad con el *Puerto Rico Oversight, Management and Economic Stability Act* (PROMESA), 48 USCA sec. 2101, *et seq.*

Pasado un tiempo, el 24 de septiembre de 2018 para ser exactos, el ELA le informó al tribunal que las partes habían

acordado la desparalización del caso respecto a los asuntos dispositivos que habían quedado pendientes. En respuesta a ello, el Tribunal de Primera Instancia emitió una *Resolución* mediante la cual denegó las mociones de reconsideración que habían quedado pendientes, según fueron presentadas por las partes.

Aún insatisfechos, el 15 de octubre de 2019 los peticionarios acudieron al Tribunal de Apelaciones mediante recurso de apelación. Allí, señalaron que el foro primario había errado al concluir que la acción por salarios no pagados estaba prescrita, así como al denegar la resolución sumaria respecto a la validez del Memorando Núm. 5-86 de OCAP. El ELA también compareció ante el foro apelativo intermedio y reprodujo similares argumentos a los esbozados ante el Tribunal de Primera Instancia.

Así las cosas, el 30 de enero de 2020 el Tribunal de Apelaciones notificó una *Sentencia* mediante la cual confirmó el dictamen recurrido. En lo referente a la validez del Memorando Núm. 5-86, determinó que dicha controversia era una compleja la cual requería la presentación de prueba adicional.

**Así, el foro apelativo intermedio también resolvió que conforme a la jurisprudencia interpretativa la reclamación salarial instada por los peticionarios había prescrito de conformidad a lo dispuesto en el Art. 1867 del Código Civil de 1930, *infra*. En cuanto a la retroactividad de la reclamación, concluyó que el foro primario no incidió al**

**desestimar la reclamación de los peticionarios y resolver que, por referencia, a éstas les aplicaba el periodo retroactivo de tres (3) años, según se establecía en la *Ley de Salario Mínimo, Vacaciones y Licencia por Enfermedad de Puerto Rico*, *infra*. Fundamentó su determinación en la metodología del razonamiento analógico aplicado en el caso *Muñoz Hernández v. Policía de P.R.*, 134 DPR 486 (1993), y en el principio de *in pari materia* utilizado en la *Sentencia* y posterior *Resolución* emitida por esta Curia en el caso *Villanueva Aponte y otros v. Universidad de Puerto Rico*, 166 DPR 96 (2005).**

En desacuerdo con la determinación del Tribunal de Apelaciones, los peticionarios acuden ante nos mediante recurso de apelación. En su escrito, aducen que el foro apelativo intermedio erró al negarse a dictar sentencia sumaria respecto a la controversia sobre la validez del Memorando Núm. 5-86 de la OCAP, al concluir que la reclamación de salarios estaba prescrita y al aplicar el término retroactivo establecido en la *Ley de Salario Mínimo, Vacaciones y Licencia por Enfermedad de Puerto Rico*, *infra*, a las reclamaciones salariales instadas por empleados públicos.

Oportunamente, el ELA compareció ante este Tribunal mediante su *Alegato del Estado*. En resumen, sostiene que el Tribunal de Primera Instancia cumplió a cabalidad las normas establecidas en la Regla 36.4 de Procedimiento Civil, *infra*, al establecer cuáles hechos materiales estaban o no en

controversia, por lo que la determinación referente a la validez del Memorando Núm. 5-86 de la OCAP fue correcta. A su vez, reitera que los foros *a quo* actuaron correctamente al concluir que la reclamación de los peticionarios por salarios dejados de percibir está prescrita.

Trabada así la controversia, y con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

## II.

Como es sabido, la Regla 36 de Procedimiento Civil, 32 LPRA Ap. V., R. 36, regula todo lo relacionado a la moción de sentencia sumaria. Dicho mecanismo procesal es utilizado en aquellos litigios que no presentan controversias genuinas de hechos materiales y que, por consiguiente, la celebración de un juicio en su fondo no es necesaria en la medida que solo resta por dirimir determinadas controversias de derecho. *SLG Fernández-Bernal v. RAD-MAN et al.*, 208 DPR 310, 334 (2021); *León Torres v. Rivera Lebrón*, 204 DPR 20, 41 (2020); *Rodríguez García v. UCA*, 200 DPR 929, 940 (2018).

El propósito que se persigue con el mecanismo de la sentencia sumaria es que los pleitos civiles sean solucionados de forma justa, rápida y económica. *SLG Fernández-Bernal v. RAD-MAN et al.*, *supra*, pág. 335; *León Torres v. Rivera Lebrón*, *supra*, pág. 43; *Roldán Flores v. M. Cuebas*,199 DPR 664, 676 (2018). Para ello, la Regla 36.3 del referido cuerpo legal, 32 LPRA Ap. V, R. 36.3, establece cual será el contenido y los requisitos de forma que deberán

observarse tanto en la solicitud de sentencia sumaria que inste la parte promovente, como en la oposición que pueda presentar la parte promovida. Véase, también, *León Torres v. Rivera Lebrón*, *supra*, pág. 43.

Para sostener u oponerse a una petición de sentencia sumaria las partes podrán presentar, entre otras, "las siguientes piezas de evidencia: certificaciones, documentos públicos, admisiones de la parte contraria, deposiciones, contestaciones a interrogatorios, declaraciones juradas o affidávits, y hasta prueba oral". R. Hernández Colón, *Práctica jurídica de Puerto Rico: Derecho Procesal Civil*, 6ta ed., San Juan, LexisNexis, 2017, pág. 318. Véase, además, Regla 36.5 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.5. Específicamente, y cuando una parte acompaña su solicitud u oposición de sentencia sumaria de una o varias declaraciones juradas, estas deben cumplir con las disposiciones especiales pautadas en la Regla 36.5 de Procedimiento Civil, *supra*. A esos efectos, "se requiere que las declaraciones juradas demuestren afirmativamente el conocimiento personal y la calificación del testigo, también [se requiere] que se presenten únicamente hechos admisibles como evidencia en [un] juicio". Hernández Colón, *op. cit.*, pág. 319.

Es decir, cuando la solicitud de sentencia sumaria está apoyada en una o varias declaraciones juradas, dicha prueba no podrá contener solo conclusiones sin hechos específicos que las sustenten. *Roldán Flores v. M. Cuebas*,

*supra*, pág. 677; *Ramos Pérez v. Univisión*, 178 DPR 200, 216 (2010); *Corp. Presiding Bishop CJC of LDS v. Purcell*, 117 DPR 714, 722 (1986). Lo anterior, serían meras conclusiones reiterando las alegaciones de la demanda y, por tanto, prueba insuficiente y sin valor probatorio. Véase, J.A. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, San Juan, Pubs. J.T.S., 2000, T. I, págs. 615-616.

Así pues, un tribunal podrá emitir una sentencia sumaria si de las alegaciones, deposiciones, contestaciones, interrogatorios y admisiones ofrecidas, junto a las declaraciones juradas -- según fueran ofrecidas --, surge que no existe una controversia real sustancial en cuanto a ningún hecho material, restando entonces resolver la controversia en estricto derecho. Véase, Regla 36.3 de Procedimiento Civil, *supra*. Véase, además, *Rodríguez García v. UCA*, *supra*; *Roldán Flores v. M. Cuebas*, *supra*. Al respecto, es preciso aclarar que el hecho de que la parte promovida no presente prueba que controvierta la evidencia presentada por la parte promovente de la moción de sentencia sumaria, no implica que dicha moción procederá automáticamente si efectivamente existe una controversia sustancial sobre hechos materiales. *Fernández-Bernal v. RAD-MAN et al.*, *supra*, pág. 337; *Rodríguez García v. UCA*, *supra*, pág. 941; *Roldán Flores v. M. Cuebas*, *supra*, pág. 677.

Además, en múltiples ocasiones hemos sido enfáticos en que, como regla general, **una moción de sentencia sumaria no**

**procederá cuando: (1) existan hechos materiales y esenciales controvertidos**; (2) haya alegaciones afirmativas en la demanda que no han sido refutadas; (3) surja de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material y esencial; o (4) como cuestión de derecho, no proceda. *Fernández-Bernal v. RAD-MAN et al., supra*, págs. 335-336; *Rodríguez Méndez v. Laser Eye, supra*; *Szendrey v. Consejo de Titulares*, 184 DPR 133, 167 (2011). De igual forma, es también norma reiterada que el mecanismo de sentencia sumaria no es utilizable cuando existen controversias de hechos materiales sobre elementos subjetivos de intención, propósitos mentales o negligencia. *Velázquez Ortiz v. Mun. de Humacao*, 197 DPR 656 (2017)*; Const. José Carro v. Mun. Dorado*, 186 DPR 113, 129 (2012); *Ramos Pérez v. Univisión, supra*, pág. 219.

Por último, resta señalar que, conforme la jurisprudencia aplicable, al momento de atender una solicitud de revisión de sentencia sumaria los foros apelativos estamos llamados a "examinar el expediente *de novo* y verificar que las partes cumplieron con las exigencias" pautadas en las Reglas de Procedimiento Civil. *Fernández-Bernal v. RAD-MAN et al., supra*, pág. 338 citando a *Rivera Matos et al. v. ELA*, 204 DPR 1010, 1025 (2020). En ese proceder, y de encontrar que los hechos materiales realmente están incontrovertidos, nos corresponde entonces revisar si el foro primario aplicó correctamente el Derecho.

*Fernández-Bernal v. RAD-MAN et al.*, *supra*; *González Santiago v. Baxter Healthcare*, 202 DPR 281, 291 (2019); *Meléndez González v. M. Cuebas*, *supra*, pág. 118.

III.

A.

Por otra parte, y por ser en extremo pertinente para la correcta disposición de las controversias ante nuestra consideración, es menester repasar aquí aquellas disposiciones estatutarias que rigen los asuntos relacionados a la retribución salarial de los empleados públicos. De entrada, resulta pertinente recordar que el Art. II, Sec. 16, de la Constitución del Estado Libre Asociado de Puerto Rico reconoce "el derecho de todo trabajador a recibir […] igual paga por igual trabajo". Art. II, Sec. 16, Const. ELA, LPRA, Tomo 1. A esos efectos, hemos reconocido que es la política pública del Estado que los principios de equidad y justicia queden reflejados en la fijación de los salarios de los empleados públicos. *Rivera Padilla v. OAT*, 189 DPR 315, 356 (2013); *Nigaglioni v. Depto. de Salud*, 149 DPR 180, 190 (1999); *Guzmán Rosario v. Depto. de Hacienda*, 147 DPR 46, 52-53 (1998).

En esa dirección, la Ley Núm. 5 de 14 de octubre de 1975, conocida como la *Ley de Personal del Servicio Público de Puerto Rico* (en adelante, "*Ley de Personal*"), 3 LPRA ant. sec. 1301 *et seq*. (derogada), reafirmó lo dispuesto en la antes aludida disposición constitucional, a la vez que reforzó la política pública del principio de méritos que

imperaba desde hacía ya varias décadas mediante la Ley Núm. 345 de 12 de mayo de 1947. Así, pues la *Ley de Personal*, *supra*, se creó con el propósito de extender a todo el sector del empleo público un sistema de méritos mediante el establecimiento de planes de clasificación y escalas de retribución salarial que considerarían factores tales como el nivel de responsabilidad del puesto, complejidad de las funciones y cualificaciones necesarias, costos de vida, posibilidades fiscales, entre otros. Véase, Art. 5.14 de la *Ley de Personal*, 3 LPRA ant. sec. 1354 (derogada). Los referidos planes a su vez serían establecidos y actualizados por cada *Administrador Individual* junto a la OCAP.[4]

En diálogo con el anterior estatuto, también se promulgó la Ley Núm. 89 de 12 de julio de 1979, mejor conocida como la *Ley de Retribución Uniforme* (en adelante, "*Ley de Retribución*"), 3 LPRA ant. sec. 760 *et seq.* (derogada), para proveer a todos los empleados y las empleadas del servicio público cubiertos por la *Ley de Personal*, *supra*, un tratamiento equitativo y justo mediante la fijación de escalas de retribuciones uniformes. Véase, Art. 2 de la *Ley de Retribución*, 3 LPRA ant. sec. 760a (derogada). Posteriormente, ambas leyes fueron derogadas y sustituidas por la Ley 184 de 3 de agosto de 2004, conocida

---

[4] Según definido, un *Administrador Individual* es una agencia, organismo o programa cuyo personal se rige por el principio de mérito y se administra en forma autónoma con el asesoramiento, seguimiento y ayuda técnica de la Oficina Central de Administración de Personal (OCAP). Véase, Art. 11 de la *Ley de Retribución*, 3 LPRA ant. sec. 760j (derogada).

como la *Ley para la Administración de los Recursos Humanos en el Servicio Público del Estado Libre Asociado de Puerto Rico* (en adelante, "*Ley para la Administración de los Recursos Humanos*"), 3 LPRA ant. sec. 1461 *et seq.* (derogada). Con esta última, se reafirmó el principio de méritos a la vez que se redefinieron las facultades y funciones de la Oficina de Capacitación y Asesoramiento en Asuntos Laborales y de Administración de Recursos Humanos (OCALARH); que anteriormente era la OCAP.[5]

En lo concerniente al caso de autos, el Art. 11 del Plan Núm. 3 de 22 de junio de 1994, también conocido como *Plan de Reorganización del Departamento de Hacienda*, 3 LPRA Ap. IX, dispone que dicha agencia y sus componentes operacionales se organizarán como Administradores Individuales de conformidad con la *Ley de Personal*, *supra*, y la *Ley de Retribución*, *supra*. Asimismo, el citado artículo establece que el Director de la OCAP, "aprobará los planes de clasificación y retribución conforme a estas leyes antes

---

[5] Aunque la *Ley para la Administración de los Recursos Humanos*, *supra*, estaba vigente a la fecha en que se instó el caso de epígrafe, es pertinente mencionar que recientemente, ésta también quedó derogada y sustituida por la Ley Núm. 8 de 4 de febrero de 2017, conocida como *Ley para la Administración y Transformación de los Recursos Humanos en el Gobierno de Puerto Rico*, 3 LPRA sec. 1469 *et seq.* Mediante esta última se estableció, entre otras cosas, al Gobierno de Puerto Rico como Empleador Único y se centralizó la administración de los recursos humanos de todas las agencias e instrumentalidades bajo el Gobierno Central. Véase, Art. 2 de la Ley Núm. 8-2017, 3 LPRA sec. 1469a. A la luz de esos cambios, actualmente los planes de clasificación y retribución en la administración central están unificados y los empleados en distintas agencias e instrumentalidades del Gobierno Central, con funciones iguales o similares, están clasificados bajo el sistema de clasificación que se ordenó con la pieza legislativa de referencia. *Íd.*

citadas, tras mediar la certificación sobre disponibilidad de fondos de la Oficina de Gerencia y Presupuesto". *Íd.*

Dicho ello, y en lo relativo a la controversia objeto de estudio, queda claro que si bien los mencionados estatutos legales regulaban la retribución salarial de los empleados y las empleadas gubernamentales, éstos nada establecen en cuanto a dos (2) asuntos medulares para la correcta disposición del caso de marras, a saber: 1) ¿cuál es el término prescriptivo aplicable a las reclamaciones salariales instadas por empleados públicos, y desde cuándo empieza a decursar dicho término?; y 2) ¿cuál es el periodo de tiempo, si alguno, al cual se debe limitar o retrotraer dicha reclamación salarial? Nos corresponde, pues, brindar una contestación a ambas interrogantes. Procedemos a así hacerlo.

B.

De entrada, y en lo relacionado al primero de los asuntos antes reseñados, -- entiéndase, cuál es el término prescriptivo aplicable a las reclamaciones salariales instadas por empleados públicos y desde cuándo empieza a decursar dicho término -- debemos tener presente que en nuestra tradición civilista la prescripción extintiva es una institución del derecho sustantivo que exige ejercer determinada causa de acción en determinado tiempo. *Haedo Castro v. Roldán Morales*, 203 DPR 324, 336 (2019); *Maldonado Rivera v. Suárez*, 195 DPR 182, 192 (2016); *Orraca López v. ELA*, 192 DPR 31, 49 (2014). Esta figura tiene el propósito

de promover que las reclamaciones válidas se insten de manera diligente y oportuna, a la vez que se asegura la estabilidad y certeza en las relaciones y el tráfico jurídico. *Íd*. Se parte de la idea de que una persona no debe quedar sujeta a la contingencia de una reclamación de forma indefinida, pues con el pasar del tiempo ésta pudiera quedar en una situación de indefensión ante la perdida de evidencia a su favor. *Íd*.

De manera que, una vez se agota el término prescriptivo que se tiene para ejercer determinada acción con ello se extingue el derecho a reclamar por la misma, quedando exonerada la persona que estaba sujeta a responder. *Maldonado Rivera v. Suárez*, *supra*; *SLG García-Villega v. ELA*, 190 DPR 799, 812 (2014); *Orraca López v. ELA*, *supra*. Por eso, la prescripción es una defensa afirmativa que deberá plantearse de forma expresa y oportuna o, de lo contrario, se cree renunciada. *Haedo Castro v. Roldán Morales*, *supra*; *Meléndez Rivera v. CFSE*, 195 DPR 300 (2016); *S.L.G. Serrano-Báez v. Foot Locker*, 182 DPR 824, 831 (2011). El fin perseguido es, pues, "castigar la dejadez en el ejercicio de los derechos y evitar litigios que sean difíciles de adjudicar debido a la antigüedad de las reclamaciones". *SLG García-Villega v. ELA*, *supra*, pág. 813.

**Sabido es que, en el contexto de las reclamaciones salariales de los servidores públicos, el término prescriptivo aplicable a éstas se rige por los postulados**

**del Código Civil.[6] Así quedó establecido, desde hace varias décadas atrás, en el normativo caso de *Aponte v. Srio. de Hacienda, E.L.A.*, 125 DPR 610, 620 (1990), en donde pautamos que la prescripción trienal dispuesta en el inciso tercero del Art. 1867 del Código Civil de 1930, 31 LPRA ant. sec. 5297 (derogado),[7] aplicaría a "todos los créditos, derivados de un contrato de trabajo o de servicios, como precio o remuneración de los servicios o del trabajo prestado". *Íd.*, citando a L. Díez-Picazo, *La prescripción en el Código Civil*, Barcelona, Ed. Bosch, 1964, pág. 208.**

En aquella ocasión, nos enfrentamos a la pregunta de si la reclamación salarial de ciertos empleados públicos estaba prescrita. Tras un estudio comparado de las disposiciones similares en el Código Civil español, las interpretaciones de prestigiosos tratadistas en el tema y, al amparo del Art. 12 del Código Civil de 1930, 31 LPRA

---

[6] Es menester mencionar que, si bien se aprobó un nuevo Código Civil en el 2020, el citado a través del presente escrito estaba vigente al momento de formularse las reclamaciones aquí en controversia.

[7] En lo pertinente, el precitado Art. 1867, *supra*, leía como sigue:

"Por el transcurso de tres (3) años prescriben las acciones para el cumplimiento de las obligaciones siguientes:

(1) …

(2) …

(3) La de pagar a los menestrales, criados y jornaleros el importe de sus servicios, y de los suministros o desembolsos que hubiesen hecho, concernientes a los mismos.

(3) …

(5) …

El tiempo para la prescripción de las acciones a que se refieren los tres párrafos anteriores se contará desde que dejaron de prestarse los respectivos servicios".

ant. sec. 12 (derogado),[8] resolvimos que, en ausencia de un término prescriptivo en la legislación especial aplicable, el plazo para ejercer una acción por reclamación de salario de un empleado gubernamental se regía por lo contemplado en el Art. 1867 del Código Civil de 1930, *supra*.

Explicamos, además, que como excepción a la regla general de que los términos prescriptivos comenzaban a computarse desde que se podía ejercer la acción, se desprendía del último párrafo del precitado Art. 1867, *supra*, que el término de prescripción allí establecido comenzaría a contar desde que se dejasen de prestar los respectivos servicios.[9]

Así, pues, y según su posterior jurisprudencia interpretativa, el referido plazo de tres (3) años se computa desde que: 1) el empleado cese de trabajar para su patrono; 2) cuando interrumpa sus servicios por un periodo de tiempo sin explicación para ello, aunque el patrono lo vuelva a emplear; o 3) cuando sin dejar de trabajar para el patrono, opera una novación del contrato por motivos de

---

[8] El cual establecía que: "[e]n las materias que se rijan por leyes especiales, las deficiencias de éstas se suplirán por las disposiciones de este código". *Íd.*

[9] Al respecto dijimos que:

> "[e]l breve plazo concedido se entiende porque es normal que estos créditos se cobren sin demora, pues son deudas de la vida cotidiana, a cuya realización conviene que la ley dé algún impulso". Puig Brutau, *Caducidad, Prescripción Extintiva y Usucapión*, Barcelona, Ed. Bosh, 1988, pág. 152], citando a L. Díez-Picazo, *infra*. Por esta razón se justifica un acortamiento de los plazos prescriptivos normales". *Íd.*, pág. 620.

cambios sustanciales en la naturaleza de los servicios que el obrero venía prestándole. *Aponte Martínez v. Srio. de Hacienda*, *E.L.A.*, *supra*; *Srio. del Trabajo v. Joyería Gordons*, 99 DPR 592 (1971); *Agostini v. Tribunal Superior*, 82 DPR 219 (1961); *Muñoz v. Corte*, 63 DPR 236 (1944). Nótese que el referido término prescriptivo trienal no aplica cuando el empleado o empleada gubernamental no ha cesado sus servicios en determinada agencia. Véase, *Rivera v. Depto. de Servicios Sociales*, 132 DPR 240, 245 (1992). En tal escenario, simplemente no ha comenzado a decursar el término, por lo que no cabe hablar de prescripción.

C.

Ahora bien, lo anterior, por sí solo, no dispone en su totalidad de las controversias ante nuestra consideración. Como indicamos, y en lo relacionado al segundo de los asuntos ante nuestra consideración, -- entiéndase, cuál es el periodo de tiempo, si alguno, al cual se debe de limitar o retrotraer una reclamación salarial instada por un empleado público --, es preciso señalar que, las leyes que regulan la agencia pública contra quien los peticionarios instaron el presente litigio nada disponen sobre el particular.

Así pues, en escenarios como éstos, los cánones de hermenéutica preceptúan que los tribunales estamos llamados a determinar si tal silencio corresponde a una laguna involuntaria por parte de la Asamblea Legislativa o si, por el contrario, se trató de una omisión intencional por parte

de ésta. J.M. Farinacci Fernós, *Hermenéutica puertorriqueña: Cánones de interpretación jurídica*, San Juan, Editorial, InterJuris, 2019, pág. 156. De concluir que, "el legislador intencionalmente excluyó un asunto del texto jurídico" -- en este caso un término de retroactividad para las reclamaciones de salarios de los trabajadores del sector público -- "corresponde honrar esa determinación, salvo que produzca algún problema de naturaleza constitucional". *Íd.*

Cónsono con ello, si la Asamblea Legislativa opta por incluir o mencionar alguna cosa, palabra o concepto específico, se entienden excluidas aquellas que no fueron mencionadas. Véase, R.E. Bernier y J.A. Cuevas Segarra, *Aprobación e interpretación de las leyes en Puerto Rico*, 2da ed., San Juan, Pubs. JTS, 1987, Vol. 1, pág. 345. Así pues, tratándose de una omisión intencional, lo que procede es dar fiel cumplimiento a la voluntad legislativa y, en consecuencia, no añadir lo omitido. Farinacci Fernós, *op. cit.*, pág. 156. Como veremos más adelante, tal es el caso ante nuestra consideración.

Es, pues, a la luz de la normativa antes esbozada que procedemos a resolver.

IV.

Como mencionamos anteriormente, en la causa de epígrafe, los peticionarios señalan que los foros recurridos incidieron al negarse a disponer sumariamente de la controversia relacionada a la validez del Memorando Núm.

5-86 de la OCAP, así como al concluir que la reclamación de salarios estaba prescrita, y que debía aplicarse el término de retroactividad establecido en la *Ley de Salario Mínimo*, *supra*, en las reclamaciones salariales instadas por empleados públicos. Les asiste la razón en parte. Veamos.

De entrada, y en cuanto al señalamiento de los peticionarios respecto a que se debió resolver sumariamente la controversia referente a la validez del Memorando 5-86 de la OCAP, coincidimos con la apreciación del Tribunal de Primera Instancia, según confirmada por el Tribunal de Apelaciones. Y es que, como es sabido, el mecanismo procesal de sentencia sumaria solo está disponible en aquellos litigios que no presentan controversias genuinas de hechos materiales por lo que se hace innecesaria la celebración de una vista evidenciaria. Tal no es el caso de autos.

En el presente litigio, luego de un detenido examen del voluminoso expediente ante nuestra consideración y de las declaraciones juradas que acompañan la solicitud de sentencia sumaria, nos percatamos que en éstas no se exponen hechos específicos tendentes a concluir que el Memorando 5-86 de la OCAP es nulo por ser contrario a los derechos y las leyes que regulan la retribución salarial de los aquí peticionarios. De la evidencia que obra en el expediente, lo único que podemos observar es que el Memorando 5-86 se limita a instruir a las agencias a que implementen el nuevo salario mínimo federal, mediante el aumento salarial de

aquellos empleados públicos que estuvieran por debajo de lo establecido.

En consecuencia, la disputa relacionada al Memorando 5-86 de la OCAP, es una que debe ser atendida mediante una vista evidenciaria. Ante ese escenario, resolvemos que el foro apelativo intermedio atendió correctamente el asunto relacionado al Memorando 5-86 de la OCAP, al rechazar resolver su validez de forma sumaria.

Resuelto lo anterior, pasamos a disponer el segundo asunto señalado por los peticionarios, el cual a su vez nos plantea dos (2) preguntas, a saber: 1) ¿cuál es el término prescriptivo aplicable a las reclamaciones salariales instadas por empleados y empleadas gubernamentales? y 2) ¿cuál es el periodo de tiempo, si alguno, al cual se debe limitar o retrotraer dicha reclamación salarial?

En cuanto a lo primero, y según indicamos anteriormente, por el presente litigio tratarse de una reclamación salarial de empleados de una entidad pública, para la cual los estatutos que la regulan no contemplan un término prescriptivo, la decisión de este Tribunal en *Aponte v. Srio. de Hacienda, E.L.A.*, *supra*, gobierna la controversia de epígrafe en lo referente a la prescripción de acciones de esta naturaleza. En ese sentido, es norma bien establecida que el término prescriptivo de tres (3) años dispuesto en el Art. 1867 del Código Civil de 1930, *supra*, rige en las reclamaciones salariales que insten los empleados y las empleadas gubernamentales. Como explicamos,

el citado término trienal se computa a partir de la fecha en que cesaron los servicios, por lo que no cabe hablar de prescripción si el empleado público se encontraba trabajando a la fecha en que se presentó la acción judicial sobre salarios dejados de pagar.

En el caso de autos, y tal como quedó establecido en los hechos incontrovertidos enumerados por el Tribunal de Primera Instancia -- los cuales adoptamos por referencia por estar apoyados en el expediente ante nos --, el grupo de los peticionarios, a la fecha en que se presentó la *Demanda* que nos ocupa, estaba compuesto tanto por empleados y empleadas que cesaron los servicios como por otros que continuaban trabajando en el Departamento de Hacienda. Con ello en mente, concluimos que la presente causa de acción solo prescribió para aquellos empleados o empleadas que cesaron servicios tres (3) años antes a la fecha en que se instó el caso de autos.

Aclarado este asunto, el foro primario deberá evaluar cuáles son los peticionarios que dejaron de trabajar en o antes del 8 de julio de 2002, esto es, los tres (3) años anteriores a que se presentara el presente litigio; el 8 de julio de 2005, para ser exactos. Respecto a ese grupo de peticionarios la acción está prescrita en virtud del término trienal fijado en el Art. 1867 del Código Civil de 1930, *supra*.

Ahora bien, realizado el análisis referente a la prescripción, y en cuanto a los peticionarios para los

cuales se resuelva que la acción no está prescrita, -- ya sea porque comparecieron dentro de los tres (3) años o porque se trata de empleados que no habían cesado los trabajos a la fecha en que se presentó la *Demanda* de referencia --, debemos responder la segunda pregunta que se nos plantea. Es decir, ¿cuál es el término de retroactividad aplicable, si alguno, a las reclamaciones salariales respecto a los empleados y las empleadas para los cuales no está prescrita la presente causa de acción?

En esa dirección, y ante el silencio que guarda la *Ley del Personal*, *supra*, la *Ley de Retribución*, *supra*, así como sus respectivos reglamentos, resolvemos que la clara intención legislativa fue que los empleados y las empleadas no estuvieran sujetos a ningún término de retroactividad respecto a sus reclamaciones salariales. Lo anterior, debido a la inaplicabilidad expresa de la *Ley de Salario Mínimo*, *infra*,[10] y el silencio legislativo en las

---

[10] En específico, la Ley Núm. 180 de 27 de julio de 1998, conocida como la *Ley de Salario Mínimo, Vacaciones y Licencia por Enfermedad de Puerto Rico* (en adelante, "Ley de Salario Mínimo"), 29 LPRA sec. 250 *et seq.*, se creó con el propósito de, entre otros, concretizar la política pública dirigida a establecer el salario mínimo federal para aquellas empresas cubiertas por la legislación federal. Véase, Exposición de Motivos de la Ley de Salario Mínimo, *supra*. Asimismo, la mencionada ley también provee un mecanismo ágil para la protección de los empleados y las empleadas que no estén cubiertos por la legislación federal, en cumplimiento con el mandato constitucional que reconoce que los trabajadores deberán tener un salario mínimo razonable. *Íd*. **Por tanto, es claro que, con la Ley de Salario Mínimo, *supra*, se persigue disponer de las normas sobre la remuneración de los empleados y las empleadas en el sector privado.**

En lo concerniente, y a la fecha en que se presentó el caso que nos ocupa, el lenguaje del Art. 12 de la Ley de Salario Mínimo, 29 LPRA sec. 250j, rezaba que:

"(a)    Por el transcurso de tres (3) años prescribirá la acción en reclamación de salarios que pueda tener un

disposiciones legales aplicables a los referidos empleados públicos, lo cual, a todas luces, impedía que realizáramos -- tal como lo hizo el foro apelativo intermedio -- un análisis *in pari materia*. Y es que, la exclusión expresa de los funcionarios públicos en la *Ley de Salario Mínimo*, *supra*, hace inaplicable lo dispuesto en su Art. 12 (b), *supra*, y, consecuentemente, nos impide realizar el análisis dispuesto en el Art. 18 del Código Civil de 1930, 31 LPRA ant. sec. 18 (derogado).[11]

Por lo tanto, y en lo referente al caso ante nos, aquellos empleados y empleadas que presentaron su causa de

---

empleado contra su patrono al amparo de este capítulo o cualquier decreto mandatorio, ya aprobado o que se apruebe, de acuerdo con las disposiciones de este capítulo o al amparo de cualquier contrato o ley. Para la prescripción de esta acción, el tiempo se contará desde que ese empleado cesó su empleo con el patrono. […]

(b) Cuando el empleado estuviere trabajando con el patrono, la reclamación solamente incluirá los salarios a que tuviese derecho el empleado, por cualquier concepto, durante los últimos tres (3) años anteriores a la fecha en que se estableciese la acción judicial.

(c) En el caso de que el empleado hubiere cesado en su empleo con el patrono, la reclamación solamente incluirá los últimos tres (3) años anteriores a la fecha de la cesantía".

Ahora bien, el Art. 8 de la Ley de Salario Mínimo, 29 LPRA sec. 250f, -- al igual que su antecesora -- expresamente dispone que las disposiciones de dicha ley no aplicarán a personas empleadas "por el Gobierno de Puerto Rico, con excepción de aquellas agencias o instrumentalidades de éste que operen como negocios o empresas privadas". Por lo tanto, no podemos suplir el silencio de los estatutos que gobiernan la controversia ante nos respecto al periodo de retroactividad aplicable.

[11] En lo pertinente, el Art. 18 del Código Civil de 1930 (derogado), *supra*, establecía que "[l]as leyes que se refieren a la misma materia o cuyo objeto sea el mismo, deben ser interpretadas refiriendo las unas a las otras, por cuanto lo que es claro en uno de sus preceptos pueda ser tomado para explicar lo que resulte dudoso en otro". Véase, además, *Colón Burgos v. Marrero Rodríguez*, 201 DPR 330, 339 (2018); *Zambrana Maldonado v. E.L.A.*, 129 DPR 740, 750 (1992); *Aponte v. Srio. de Hacienda, E.L.A.*, *supra*, pág. 624. Tal no es el caso de autos.

acción dentro del término trienal de prescripción podrán reclamar, sin término alguno de retroactividad, los salarios dejados de percibir. Ello es lo correcto en derecho.[12]

V.

En fin, por entender que el término prescriptivo de las reclamaciones salariales de los empleados y empleadas gubernamentales es de tres (3) años, y debido a que dichas reclamaciones no tienen un término de retroactividad aplicable, modificamos la sentencia recurrida en los términos dispuestos en esta *Opinión* y, según modificada, la confirmamos. En consecuencia, se devuelve el caso al foro primario para que continúe con los procedimientos a tenor con lo aquí dispuesto.

Se dictará sentencia de conformidad.

Ángel Colón Pérez
Juez Asociado

---

[12] De entenderlo pertinente, le corresponde a la Asamblea Legislativa modificar el estatuto y establecer el término que entienda pertinente, si alguno. Véase, *Jiménez, Hernández v. General Inst., Inc.*, 170 DPR 14, 66 (2007); *Consejo Arqueológico v. Mun. Barceloneta*, 168 DPR 215, 231 (2006); *Defendini Collazo et al. v. E.L.A., Cotto*, 134 DPR 28, 73 (1993).

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Prudencio Acevedo Arocho
y Otros

    Apelantes

       v.

Departamento de Hacienda,
de Puerto Rico y Otros

    Apelados

AC-2020-0037    *Apelación*

SENTENCIA

En San Juan, Puerto Rico a, 26 de junio de 2023.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de la presente Sentencia, se modifica la sentencia recurrida en los términos dispuestos en esta Opinión y, según modificada, la confirmamos. En consecuencia, se devuelve el caso al foro primario para que continúe con los procedimientos a tenor con lo aquí dispuesto.

Lo pronunció, manda el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Presidenta Oronoz Rodríguez hace constar la siguiente expresión:

"Estoy conforme con la Opinión que hoy emite este Tribunal. No solamente porque lo resuelto es correcto en derecho, sino también porque es lo que procede, en justicia, para nuestras trabajadoras y trabajadores.

Nos correspondía, en esta ocasión, atender dos controversias puntuales, a saber: (a) si las reclamaciones salariales de los peticionarios —empleados y exempleados gubernamentales— están limitadas por un término

prescriptivo, y (b) si estas, a su vez, están sujetas a un término de retroactividad; es decir, si pueden requerir que se les satisfagan todos los salarios que les adeudan o si solamente pueden reclamar un número específico de años. Se brinda, ciertamente, una respuesta correcta a estas interrogantes.

Con relación a la primera controversia, en vista de que la *Ley de Personal del Servicio Público*, Ley Núm. 5 de 14 de octubre de 1975, 3 LPRA ant. sec. 1301 et seq., y la *Ley de Retribución Uniforme*, Ley Núm. 89 de 12 de julio de 1979, 3 LPRA ant. sec. 760 et seq. —estatutos retributivos aplicables a los peticionarios— guardan silencio en cuanto al término prescriptivo, me parece atinado recurrir al precedente de Aponte v. Srio. de Hacienda, 125 DPR 610 (1990), para suplir esa laguna. Por ello, estoy conteste con que reafirmemos lo que allí se resolvió, con el fin de disponer de este asunto puntual. En Aponte v. Srio. de Hacienda, supra, nos valimos del Artículo 1867 del Código Civil de 1930 (Código), 31 LPRA ant. sec. 5297, y pautamos que el término prescriptivo de tres (3) años allí prescrito era el aplicable a las reclamaciones salariales de empleados y empleadas gubernamentales. Aponte v. Srio. de Hacienda., supra, pág. 621-622.

De otro lado, y en lo atinente a la segunda controversia, las legislaciones retributivas objeto de este caso tampoco proveen un término de retroactividad para las reclamaciones salariales de los empleados gubernamentales. Ante tal cuadro, y dado que el Código no contiene disposición supletoria alguna sobre este particular, correspondía —como lo hacemos— pautar que dichas reclamaciones no están sujetas a algún término de retroactividad.

Sobre este extremo, es erróneo el raciocinio de la parte recurrida y del Tribunal de Apelaciones. Estos recurren a la *Ley de Salario Mínimo, Vacaciones y Licencia por Enfermedad en Puerto Rico* (Ley de Salario Mínimo, Vacaciones y Licencia por Enfermedad),

Ley Núm. 180 de 27 de julio de 1998, 29 LPRA sec. 250 et seq., para concluir —a través de un ejercicio hermenéutico extralimitado— que el término de retroactividad de tres (3) años que esta dispone es el aplicable a las reclamaciones salariales de las empleadas y los empleados gubernamentales. Cabe señalar que este estatuto **—aplicable a la clase obrera del sector privado—** preceptúa, sin ambages, que sus disposiciones no aplican a las empleadas y los empleados del sector público. Ello, sin más, es suficiente para derrotar este argumento. Cuando el mandato legislativo expreso dispone que una legislación es inaplicable a la clase obrera del sector público, no se puede utilizar el canon *in pari materia* para superponer legislación destinada a la clase obrera del sector privado a miembros de la clase obrera del sector público. Este canon de hermenéutica no tiene tal alcance.

En fin, lo que hoy pautamos es cónsono con la política pública en favor de la clase trabajadora. Descartamos el análisis del foro inferior que tenía el efecto de cercenar las posibilidades de las empleadas y los empleados públicos —cobijados por las leyes aquí en controversia— de recobrar retroactivamente los salarios que se le adeudan y que con su tesón devengaron. Por ello, y en defensa de los postulados que inspiran nuestro ordenamiento jurídico laboral, suscribo el pronunciamiento de esta Curia".

El Juez Asociado señor Estrella Martínez emitió Opinión de Conformidad. La Jueza Asociada señora Pabón Charneco y el Juez Asociado señor Rivera García concurren con el resultado sin opinión escrita.

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Prudencio Acevedo Arocho y otros<br><br>Peticionarios<br><br>v.<br><br>Departamento de Hacienda, Centro de Recaudaciones de Ingresos Municipales y otros<br><br>Recurridos | AC-2020-0037 | Apelación |

Opinión de conformidad emitida por el Juez Asociado Señor ESTRELLA MARTÍNEZ.

En San Juan, Puerto Rico, a 26 de junio de 2023.

El caso que hoy se encuentra ante nuestra consideración nos presenta la realidad jurídica siguiente: las leyes que rigen la retribución salarial en el gobierno no establecen un término prescriptivo para recobrar salarios adeudados y tampoco limitan los reclamos retroactivos por concepto de salarios adeudados a servidores públicos.

De entrada, nótese que se trata de dos (2) supuestos distintos. El primero versa sobre cuándo se extingue la acción para reclamar los salarios adeudados. El segundo se refiere a la cantidad de salarios adeudados; es decir,

<u>cuántas jornadas pasadas</u> se pueden reclamar que no se pagaron en el momento en que debían pagarse.

En ese sentido, la interpretación que hoy realizamos es cónsona con los precedentes de este Tribunal. Ello, pues, por un lado, reafirmamos el término prescriptivo aplicable para incoar una reclamación salarial en el sector gubernamental. Por otro, descartamos que tales reclamaciones estén sujetas a término retroactivo alguno.

Ahora bien, al resolver la segunda de estas controversias, este Tribunal correctamente desecha la interpretación del Tribunal de Apelaciones la cual, bajo un análisis errado de los principios de <u>in pari materia</u> o la analogía, pretendió imponerle cortapisas a los reclamos salariales adeudados a la clase trabajadora de Puerto Rico. Por lo anterior, estoy conforme con que nos abstuviéramos de acudir a tales principios para disponer de la controversia y, consecuentemente, reconociéramos que las reclamaciones salariales adeudadas a los empleados y las empleadas del sector público pueden ser exigidas retroactivamente sin sujeción a límite de tiempo alguno. Lo anterior, claro está, siempre y cuando la acción haya sido instada dentro del término prescriptivo aplicable.

No obstante, toda vez que el foro apelativo intermedio convalidó un análisis hermenéutico incorrecto, estimo conveniente abundar en la discusión de los

fundamentos que orientan mi conformidad con la Opinión que hoy emite este Tribunal.

**I**

En nuestro ordenamiento jurídico, "las acciones prescriben por el mero lapso del tiempo **fijado por ley**". (Negrilla suplida). 31 LPRA ant. sec. 5291. De ordinario, tanto el Código Civil como las diversas leyes especiales delinean el término prescriptivo para entablar una causa de acción y el tiempo de retroactividad al cual estará sujeto tal reclamación.

Empero, los estatutos que gobiernan la controversia ante nos son silentes en cuanto a este particular. De la Ley de personal del servicio público de Puerto Rico, Ley Núm. 5 de 14 de octubre de 1975, 3 LPRA ant. sec. 1301 et seq. (Ley de Personal), o de la Ley de retribución uniforme, Ley Núm. 89 de 12 de julio de 1979, 3 LPRA ant. sec. 760 et seq., no surge término alguno que regule los dos (2) supuestos aquí implicados. Tal y como adelanté, estos son: la existencia de un término prescriptivo para recobrar salarios adeudados en contra del gobierno y si esa reclamación está limitada a cierto periodo de retroactividad.

Sin embargo, lo anterior no fue impedimento para que, en el pasado, este Tribunal ejerciera su rol de pautar el Derecho y, consecuentemente, validara una interpretación

protectora de los derechos de la empleomanía gubernamental. Veamos.

En Aponte v. Srio. de Hacienda, E.L.A., 125 DPR 610 (1990), este Tribunal tuvo ante sí una controversia que exigía determinar cuál era el periodo prescriptivo que tenían ciertos empleados públicos para reclamar los salarios que no le fueron satisfechos. Ante la falta de término alguno en las leyes especiales de rigor, este Foro recurrió, de modo supletorio, a las disposiciones de prescripción de las acciones del Código Civil. De esta manera, concluyó que los empleados gubernamentales contaban con un periodo de tres (3) años desde que cesaban en el empleo para reclamar los salarios adeudados. Íd., págs. 621-622.

En su análisis, este Tribunal auscultó la posibilidad de acudir a otra ley especial con fines similares para identificar cuál debía ser el término prescriptivo aplicable. Para ello, analizó los contornos que regían en la Ley de salario mínimo de Puerto Rico,[1] equivalente a la actual Ley de salario mínimo, vacaciones y licencia por enfermedad de Puerto Rico, Ley Núm. 180-1998, 29 LPRA sec. 250 et seq. (Ley de Salario Mínimo, Vacaciones y Licencia por Enfermedad). No obstante, **desaprobó** su uso por razón de que el espectro de aplicabilidad de esta ley estaba

---

[1]Ley Núm. 96 de 26 de junio de 1956, 29 LPRA ant. sec. 246d.

enfocado en el sector privado. Particularmente, en Aponte v. Srio. de Hacienda, E.L.A., supra, se descartó acudir a la Ley de Salario Mínimo de Puerto Rico debido a que el sujeto en que esta se enfocaba eran los empleados del sector privado y, máxime, ante el hecho de que la ley "específicamente excluyó de su aplicación, entre otros, a los empleados gubernamentales". Íd., pág. 621. **De este precedente se desprende que el fundamento para el rechazo tajante a recurrir a una ley equivalente, pero enfocada en el sector privado, obedeció a que la Asamblea Legislativa dispuso expresamente que esa ley especial excluiría o no aplicaría a la empleomanía del sector público.**

De igual modo, en Aponte, este Tribunal validó que los empleados en cuestión pudieran reclamar retroactivamente los salarios adeudados sin limitación de tiempo alguna. Como cuestión de hecho, "[l]os empleados en Aponte reclamaron de forma retroactiva más de diez años de salarios no devengados".[2] **Esto, pues, en aquel entonces, no existía, ni existe hoy día, alguna disposición legal que limite los reclamos retroactivos por concepto de salarios adeudados por parte de empleados y empleadas del sector público en contra del gobierno.**

---

[2]D. Fernández Quiñones, Derecho laboral, 76 Rev. Jur. UPR 925, 935 (2007). Véase, además, Villanueva v. U.P.R., 166 DPR 96, 100 (2005) (Opinión disidente, en etapa de reconsideración, del Juez Asociado Señor Rebollo López).

Pese a lo anterior, el Tribunal de Apelaciones en el caso de autos, más allá de reiterar el término prescriptivo de conformidad con lo resuelto en Aponte v. Srio. de Hacienda, E.L.A., supra, impuso una limitación irrazonable sobre la retroactividad de tales reclamaciones que no tiene fundamento en las leyes que gobiernan la retribución salarial en el gobierno ni en el precedente antes citado.

Valga precisar al respecto que el foro apelativo intermedio llegó a tal conclusión, a pesar del silencio de la Ley de Personal, supra, y la Ley de Retribución Uniforme, supra, en cuanto a si las reclamaciones sobre salarios adeudados incoadas están limitadas retroactivamente por espacio de tiempo alguno. **Discrepo de esta interpretación por ser contraria a las normas de hermenéutica y a la política pública laboral vigente en nuestro ordenamiento jurídico. Además, porque obra en perjuicio de los cientos de empleados y empleadas a los cuales se les priva injustamente de reclamos sobre salarios adeudados potencialmente válidos.**

Tal y como adelanté, un análisis del caso de Aponte v. Srio. de Hacienda, E.L.A., supra, revela que se **rechazó** acudir a una ley aplicable al sector privado tras "[c]onsidera[r] que los empleados gubernamentales están excluidos de la Ley de Salario Mínimo de Puerto Rico". Íd., pág. 621.

Cónsono con esa línea interpretativa, en <u>Medina Bernard v. Adm. Corrección</u>, 126 DPR 800 (1990) (Sentencia), resuelto apenas casi cuatro (4) meses después de que se certificara el caso de <u>Aponte</u>, quedó reafirmado que se arribó a tal conclusión en este último **"en vista de que los empleados gubernamentales están excluidos de la ley de Salario Mínimo de Puerto Rico <u>y no existe término prescriptivo alguno por otra legislación especial</u>"**. (Negrilla y subrayado suplido). Íd., pág. 807 (Opinión concurrente del Juez Asociado Negrón García).

Como puede apreciarse, lo resuelto en ambos casos fue un **<u>repudio</u>** a la aplicación por analogía o <u>in pari materia</u> del término prescriptivo instaurado en la <u>Ley de salario mínimo de Puerto Rico</u>, <u>supra</u>, a los estatutos que gobiernan la empleomanía del gobierno.[3] Asimismo fue reconocido por la Academia.[4]

---

[3]Véase, A. González Berdecía, A. Suárez Vincenty, <u>Análisis y perfil adjudicativo de los jueces y de las juezas del Tribunal Supremo de Puerto Rico: Francisco Rebollo López</u>, 80 Rev. Jur. UPR 107, 131 esc. 92 (2011).

[4]En palabras del profesor Demetrio Fernández Quiñones:

> El caso de <u>Aponte</u> desechó la aplicación de la <u>Ley de Salario Mínimo</u> porque en ésta se excluyó específicamente a los empleados del gobierno. Se optó, en cambio, por suplir la deficiencia de no existir un término prescriptivo aplicable a las reclamaciones salariales contra el gobierno recurriendo al artículo 1867 del Código Civil de Puerto Rico.

Fernández Quiñones, <u>supra</u>, pág. 935.

**Adviértase, la negativa a extrapolar una disposición de ley enfocada en el contexto privado a otra dirigida al sector público** —por razón de que la primera expresamente excluyó de su aplicación el sujeto de la segunda— **tiene gran importancia, pues denota que, en el pasado, este Tribunal rechazó lo que el Tribunal de Apelaciones validó en la determinación recurrida.** A mi juicio, este ejercicio hermenéutico resultaba innecesario. Me explico.

Desde 1944, en <u>Muñoz v. Corte</u>, 63 DPR 236 (1944), este Foro tuvo la oportunidad de evaluar el segundo aspecto de la controversia, el cual, según adelanté, se circunscribe a precisar si una reclamación salarial en contra del gobierno está sujeta a límite de retroactividad alguno por el cual se pueden reclamar las ganancias adeudadas. Como bien apuntala el Juez Rebollo López al analizar en <u>Villanueva v. U.P.R.</u>, supra, lo resuelto en <u>Muñoz</u>: "esta cuestión, esto es, la de la retroactividad en esta clase de situaciones, **debe ser resuelta por la Asamblea Legislativa, y no por este Tribunal.**"[5] (Negrilla suplida). <u>Villanueva v. U.P.R.</u>, supra, pág. 101 (Opinión disidente del Juez Asociado Rebollo López). Dado lo anterior, huelga recurrir a los principios de <u>in pari materia</u> o analogía utilizados por el Tribunal de Apelaciones.

---

[5]Para una exposición íntegra de lo resuelto en <u>Muñoz v. Corte</u>, supra, refiérase a la nota al calce número once (11) de esta ponencia.

Ahora bien, toda vez que el foro apelativo intermedio ancló su razonamiento en tal ejercicio hermenéutico, procedemos, entonces, a demostrar la improcedencia de esa actuación.

En primer lugar, el Tribunal de Apelaciones, sin expresarlo, dotó el análisis in pari materia con características del razonamiento analógico en aras de suplir la laguna existente en las leyes de retribución del sector público y, así, justificar su interpretación. Empero, aquí, ante la ausencia intencional en las leyes de retribución salarial en el sector público con respecto al tiempo de retroactividad por el cual se pueden reclamar los salarios adeudados, y dada la ausencia de una disposición supletoria a la cual acudir en el Código Civil, no hay ejercicio alguno de contrarreferencia que realizar.

**Dicho de otro modo, la ausencia de una disposición en las leyes precitadas con respecto al tiempo que se pueden retrotraer las reclamaciones salariales en contra del gobierno constituye un vacío insuperable producto de un silencio legislativo intencionado que veda que se acuda a la Ley de Salario Mínimo, Vacaciones y Licencia por Enfermedad, supra.** Por tanto, no cabe hablar del axioma del principio in pari materia, pues no estamos ante una norma completa que se esparce en diferentes leyes del ordenamiento jurídico de modo que sea necesario

analizarlas integradamente para brindarles un sentido coherente.[6]

Esta ausencia de restricción legislativa intencionada, incluso, no puede ser suplida analógicamente con los postulados de la Ley de Salario Mínimo, Vacaciones

---

[6]Tal y como comenta el profesor Farinacci Fernós al resumir las diferencias significativas entre ambas figuras:

> [L]a figura de in pari materia se refiere a instancias en las que una misma norma jurídica está distribuida en varias fuentes. Cuando esto ocurre, se analizan estas fuentes de forma integrada. Por su parte, la analogía opera mediante paralelismos. Se trata de situaciones en las que dos normas son distintas y separadas, pero, comparten suficientes parecidos como para permitir que lo que es claro en una se use para suplir alguna laguna en la otra.

> […]

> Cuando opera esta figura, existe una obligación de recurrir a las fuentes relacionadas, pues, se entiende que de la suma de todas estas surge una norma jurídica completa. Esto, a diferencia de la analogía, en la que no existe dicha obligación y simplemente se usa para llenar vacíos. En el caso de in pari materia, se entiende que dicho vacío no existe; lo que ocurre es que la norma jurídica está dispersada en varias fuentes que deben analizarse integradamente.

J.M. Farrinacci Fernós, El Código Civil de 2020 y la hermenéutica puertorriqueña, (https://aldia.microjuris.com/2021/10/04/avanzadas-de-amicus-el-codigo-civil-de-2020-y-la-hermeneutica-puertorriquena/) (última visita, 31 de mayo de 2023).

y Licencia por Enfermedad, supra. Ello, pues, en nuestro ordenamiento jurídico se recurre al principio de analogía únicamente cuando se cumplen los criterios siguientes:

> (1) la existencia de una laguna legal sobre la cuestión que debe resolverse; (2) la identidad de razón entre esta y otra situación que fue contemplada; (3) que no exista prohibición legal de recurrir a la analogía[,] y (4) que no frustre la intención que emana de la ley o la política pública que la inspira.[7]

Según se desprende del texto precitado, sólo se debe acudir a la analogía cuando se cumpla con ciertos criterios puntuales. En el caso de autos, se quebrantarían más de uno (1) de los requisitos que deben converger para la aplicación del principio de analogía. Particularmente, pues, según he expuesto, por disposición **expresa** de la ley esta no será extensiva ni aplicará a los empleados gubernamentales. Véase, Art. 8 de la Ley de Salario Mínimo, Vacaciones y Licencia por Enfermedad, supra, 29 LPRA sec. 250f. **La prohibición legal existente, indudablemente, imposibilita su utilización por analogía en el caso de autos.**

Por otra parte, el Tribunal de Apelaciones infirió que lo resuelto por este Tribunal en una serie de casos

---

[7]Para una guía de los criterios normativos al aplicar la doctrina de la analogía, véase, Farinacci Fernos, op. cit, págs. 173-174 esc. 1 (refiriéndose a Torres Montalvo v. Gobernador, E.L.A., 194 DPR 760, 827 (2016) (Opinión de conformidad en parte y disidente en parte del Juez Asociado Señor Kolthoff Caraballo). Véase, además, Orraca López v. ELA, 192 DPR 31, 45 (2014).

consolidados validaba que la retroactividad de las reclamaciones se circunscriba al término de tres (3) años dispuesto en la Ley de Salario Mínimo, supra. Particularmente, dado que el foro recurrido expuso como parte de su análisis lo resuelto en Villanueva Aponte y otros v. Universidad de Puerto Rico, (CC-2003-329, CC-2003-293, CC-2003-269), me veo en la obligación de realizar unos breves comentarios al respecto.

De entrada, estimo importante señalar que Villanueva fue resuelto por este Foro mediante una Sentencia **no publicada**.[8] Aunque reconozco que las sentencias, sean estas publicadas o no, carecen del valor de precedente, reafirmo que, en ocasiones, son de utilidad por "el valor persuasivo intrínseco de sus fundamentos". Rivera Maldonado v. E.L.A., 119 DPR 74, 80 (1987). Véase, además, Figueroa Méndez v. Tribunal Superior, 101 DPR 859, 862 (1974) (Voto del Juez Asociado Señor Dávila). Ahora bien, respetuosamente entiendo que lo resuelto en Villanueva es patentemente erróneo, por lo que sus fundamentos no tienen valor intrínseco alguno y deben descartarse livianamente.

Ciertamente, la controversia planteada en Villanueva Aponte y otros v. Universidad de Puerto Rico, supra, era idéntica a la que tenemos ante nuestra consideración. Allí

---

[8]Con respecto a este particular, véase la Regla 44(d) del Reglamento del Tribunal Supremo, 4 LPRA Ap. XXI-B, la cual, en esencia, dispone que no es legítimo reseñar sentencias no publicadas que no estén accesibles a la profesión y al público en general.

se resolvió que, debido a la laguna jurídica existente, se debía recurrir a una norma de hermenéutica —en ese caso, la analogía—, y extrapolar de la <u>Ley de Salario Mínimo, Vacaciones y Licencia por Enfermedad</u>, <u>supra</u>, el término por el cual los empleados de la Universidad de Puerto Rico podían retrotraer su reclamación sobre salarios adeudados. Como agravante, a pesar de que se reconoció que el término vigente al momento en que se <u>presentó</u> la demanda para reclamar los salarios retroactivamente era de diez (10) años, inexplicablemente se aplicó el de tres (3) años por ser el que regía al momento en que se <u>resolvió</u> la controversia.

Sorprendentemente, de la sentencia no publicada se desprende que el fundamento para ello fue el siguiente:

> **Aunque esta legislación no aplica como tal a los reclamantes en el caso de autos,** nos parece razonable adoptar aquí por analogía el término referido que rige actualmente las reclamaciones de otros empleados en el país. **De este modo, además, alivianamos en algo el difícil problema que ha de encarar la UPR con respecto al pago de una cuantiosa reclamación que no estaba contemplada en su apretado presupuesto.** (Negrilla suplida). <u>Villanueva Aponte y otros v. Universidad de Puerto Rico</u>, supra, pág. 17.

Rechazo tajantemente este análisis errado realizado en el caso precitado. Según reseñó el profesor Fernández Quiñones, de lo anterior "lo más preocupante es que se use como fundamento el hecho de que la Universidad de Puerto

Rico sufra una crisis presupuestaria y que ello produzca una solución que sea contraria al derecho y a la norma jurisprudencial".[9]

Esto me obliga a reiterar que, al momento de impartir justicia, no se deben trastocar o reconocerse garantías y derechos a base de consideraciones puramente económicas. Véase, Figueroa Santiago et als. v. ELA, 207 DPR 923, 948 (2021) (Opinión disidente del Juez Asociado Señor Estrella Martínez); Pueblo v. Alers De Jesús, 206 DPR 872, 902 (2021) (Voto particular disidente del Juez Asociado Señor Estrella Martínez).

Por otro lado, el principio de analogía aplicado en Villanueva fue utilizado incorrectamente. Ello, pues, el hecho de que la ley de salario mínimo vigente en aquel entonces no aplicara o excluyera a los empleados gubernamentales, igualmente provoca que se configure el incumplimiento con al menos uno (1) de los requisitos doctrinales, lo que impide su uso analógicamente.[10]

---

[9]Fernández Quiñones, supra, págs. 935-936. **Soy del criterio de que este motivo, por sí sólo, era suficiente para que el Tribunal de Apelaciones descartara la utilización de Villanueva como referencia para resolver la controversia de autos.**

[10]Mediante una resolución en reconsideración, el Juez Asociado Señor Rebollo López criticó fuertemente la decisión a la que llegó una mayoría en la Sentencia no publicada de Villanueva. Específicamente, expuso lo siguiente:

Es por ello que, cuando menos, sorprende la actuación de la Mayoría

Por las dos (2) razones antes discutidas, los fundamentos contenidos en Villanueva no tienen valor persuasivo intrínseco alguno.

Y es que, reiteradamente hemos dicho que "[e]n el ejercicio de disipar los vacíos estatutarios, los tribunales deben ser cautelosos, toda vez que no puede adoptarse un término prescriptivo, por más analogía que guarde, que frustre la intención que emana de la ley en cuestión o la política pública que la inspira". Orraca

---

en el caso al utilizar, por analogía, la Ley de Salario Mínimo, Vacaciones y Licencia por Enfermedad de Puerto Rico para perjudicar los derechos de los empleados gubernamentales. […]

[…]

Como resulta obvio, la contradicción espantosa en la que incurre la Mayoría "salta a la vista y hiere la retina". Por un lado ésta acepta — realmente no le queda otro remedio— que la Ley de Salario Mínimo, Vacaciones y Licencia por Enfermedad de Puerto Rico no aplica, o excluye, a los empleados gubernamentales. Ello no obstante, a renglón seguido, determina que el término de retroactividad de tres años que establece esa ley es el que debe utilizarse, por analogía, en el presente caso para coartar, o limitar, los derechos de los empleados gubernamentales; esto es, "por cuánto tiempo pasado se pueden reclamar salarios que no se pagaron", a pesar de que se debían haber pagado. (Negrilla y subrayado suplido). Villanueva v. U.P.R., supra, págs. 99-100 (Opinión disidente del Juez Asociado Señor Rebollo López).

López v. ELA, 192 DPR 31, 45 (2014) (citando a Matos v. Junta Examinadora, 165 DPR 741, 748-749 (2005)).

Cónsono con ello, y de aplicabilidad a la controversia ante nuestra consideración, resulta impropio extrapolar analógicamente o bajo el principio in pari materia cierta disposición de una ley a otra cuando surge de los propios términos de la primera que esta no aplicará a los sujetos de la segunda.

Lamentablemente, ello fue ignorado por el Tribunal de Apelaciones. Al así hacerlo, pasó por alto nuestros pronunciamientos reiterados a los efectos de que "la exclusión de un empleado de los beneficios de la legislación laboral 'debe ser clara y debe interpretarse restrictivamente'" en aras de garantizar la mayor protección posible a los trabajadores y a las trabajadoras. Aponte Valentín v. Pfizer Pharmaceuticals, LLC, 208 DPR 263, 302 (2021) (Opinión disidente del Juez Asociado Señor Estrella Martínez). Véase, además, Cordero Jiménez v. UPR, 188 DPR 129, 139 (2013); Whittenburg v. Col. Ntra. Sra. Del Carmen, 182 DPR 937, 951 (2011). **Protecciones que, en sintonía con su propósito, exigen que toda duda se interprete y resuelva a favor del obrero.**

Es por lo anterior, que hoy acertadamente descartamos implantar una limitación de tiempo para recobrar salarios adeudados no contemplada en la Ley de Personal del Servicio Público de Puerto Rico, supra, ni en la Ley de Retribución

Uniforme, supra, así como tampoco en los estatutos predecesores que actualmente rigen la retribución salarial en el gobierno. Este proceder, reitero, es correcto en Derecho, pues en múltiples ocasiones nos hemos rehusado a restringir la retroactividad de las reclamaciones por la vía judicial por ser ello un asunto de la competencia de la Asamblea Legislativa.[11]

## II

En fin, hoy este Tribunal arriba a una conclusión cónsona con la política pública laboral a favor del obrero. Con ello, se descarta crear un desbalance inadmisible a

---

[11]A esos efectos, desde Muñoz v. Corte, supra, este Tribunal destacó lo siguiente:

> Los modernos medios de defensa de que en el presente dispone el obrero para defender sus derechos, hacen innecesario para él y quizás injusto para el patrono mantener a este último sujeto a la amenaza de una **reclamación de salarios por todo el tiempo que pueda durar un contrato de servicios sin término definido** y hasta tres años después de haberse dejado de prestar los respectivos servicios. En muchos casos el patrono corre el riesgo de perder la evidencia que hubiera podido usar en su defensa si el pleito contra él se hubiera presentado dentro de un plazo razonable; en otros, puede crecer a tal extremo el montante de la reclamación que la sentencia que lo condene a pagarla pueda producir su ruina económica. **Pero esas consideraciones, lógicas y justas como son, deben ser sometidas a la Asamblea Legislativa y no a los tribunales**[.]

(Negrilla y subrayado suplido). Íd., págs. 248-249.

favor del Estado y en perjuicio de los empleados y las empleadas del gobierno. De igual manera, se rechaza diluir los propósitos de las leyes de retribución salarial del sector público —las cuales fueron inspiradas en el principio constitucional de igual paga por igual trabajo—[12] con la consecuencia de que las empleadas y empleados puedan reclamar su acreencia sin sujeción de término retroactivo. Por todo lo anterior, estoy conforme con la Opinión que hoy emite este Tribunal.


                                    Luis F. Estrella Martínez
                                         Juez Asociado

---

[12]Para una discusión sobre la inequidad salarial desde otros ámbitos jurídicos, véase, L. F. Estrella Martínez, Equidad laboral para la mujer, Ed. SITUM, 2021, págs. 28-31. Véase, además, Rivera Padilla v. OAT, 189 DPR 315, 355-358 (2013).